## McMillan *v.* Sprague *et al.*

The statute of 1837, which requires that the makers and endorsers of promissory notes shall be sued in joint actions, does not impair the obligation of the contract.

The remedy is not a part of the contract, nor does the obligation of a contract consist in any particular form of remedy.   It is only necessary that the Legislature should provide an adequate subsisting remedy.

The act of 1837, is neither repugnant, nor contradictory in its provisions.

ERROR to the circuit court for the county of Adams.

D. S. Jennings, for plaintiff in error.
Winchester, *contra.*

Mr. Chief Justice SHARKEY delivered the opinion of the court, which contains a sufficient statement of the cause.

This action was instituted against the maker and the several endorsers of a promissory note, under the statute of 1837, which requires that the maker and endorsers shall be sued in a joint action.   The declaration sets out the making of the note and the several endorsements, and avers a general liability and refusal to pay, against all the parties.   The defendants demurred, and by the causes of demurrer the validity of the act is brought directly in question.   Two objections are taken to it.   First, it is said to impair the obligation of contracts, and second, it is said to be so repugnant and contradictory in its provisions that it cannot be carried into effect.

First.   The obligation of a contract was said in the argument, and very properly, to be the duty which the obligor is under to perform it.   This duty in regard to the legal obligation of a contract, arises out of the law which requires that every one shall perform his contract.   But as it would be useless to command, without also providing the means of enforcing the command, in case of refusal, the law goes further, and provides a remedy for

disobedience to its mandate, and this remedial part is the most efficient and essential part of the law. Without it no other than an imperfect obligation would exist, and hence the remedy constitutes the essential part of the legal obligation of the contract. But the remedy is not a part of the contract itself, nor does the obligation of a contract consist in any particular form of remedy. It is only necessary that there should be an adequate subsisting remedy. It is therefore believed to be competent for the legislature to change the remedy. Every form of remedy is a mere question of policy, over which the legislature has entire control, so that the power to enforce the duty be not weakened. If the remedy given be as good as that which was taken away, the obligation of the contract is not thereby impaired. How has this statute affected the obligation of the contract in the case before us? Before the act was passed the plaintiff's remedy consisted in his right to bring an action of assumpsit against each party whose name appeared on the note, either as maker or endorser, and to have separate executions on his judgments, but payment by any one was a discharge of the debt, or a levy of the money out of the property of any one, was also a discharge of the others. Since the statute, the action must be joint instead of several, and the execution is accordingly. But even the form of action is not changed, assumpsit being still the appropriate remedy. If the party be entitled to the same remedy now that he was before the statute, how, I would ask, is the obligation of the contract impaired? His remedy is neither weakened nor changed. The statute takes nothing from the remedy. He still has his right of action against all the parties. The effect of the act is to destroy the common law right of election as to which party should be sued, and now if suit be brought, it must be against the whole. Nothing is perceived in the act which renders it obnoxious to the constitutional provision, and if we may be permitted to speak of its policy, our highest commendation is invoked for it. If the question stood in need of authority, we conceive it to be abundantly supplied in the cases cited. The act of the Ohio legislature referred to in the case cited from 1 Peters, is similar in its provisions, and the supreme court of the United States said of it, that it "was conceived in the true spirit of distributive justice; that it violated

no principle," and that it was easily introduced into practice. The act of the New York legislature is also similar, differing only in one unimportant feature, that is, in declaring the contract of makers and endorsers to be a joint one, instead of several. From this provision it would have followed that a joint action might have been maintained without the subsequent provision so requiring that it should be brought. We therefore conclude that there is nothing in the first objection taken to the act.

2d. We believe, also, that the second objection to the act is equally untenable. It is argued that the legislature have not changed the contract, and that it is still purely several. If this position were true, it would still, it is believed, be unimportant. The distinction between a joint and several contract, is one taken by the common law, and when taken it has its influence in dictating the remedy. When the contract was several it was more consistent that the remedy should also be pursued severally, and as a common law principle the remedy was thus made to harmonize with the contract. But both these are mere regulations of the common law, which may be altered at pleasure, and the alteration may be either by direct declaration of the legislature, or as a consequence, the alteration of the one necessarily following the alteration of the other. Thus when the legislature of New York declared the contract of the maker and endorsers to be joint, the consequence necessarily followed that the remedy was to be pursued against them jointly, for a joint contract gives a joint remedy; and *vice versa*, when a joint remedy is given it necessarily makes the contract joint for all the purposes of that remedy, without so declaring it to be. The character of the remedy may fix the character of the contract, and so we conceive it to be in this case. When the legislature declared that but one suit should be brought against all the parties, this as much made the contract joint, as though it had been expressly so declared; at least for all the purposes of the remedy given.

But it is also said that by the act the parties are compelled to plead jointly, and have but one plea. The answer is that the right to plead separately, and to plead double, are both mere rights conferred by law, and the law may change them. But the rights of the parties are not abridged by this provision, for the

Vol. IV.—55

[McMillan-*v.* Sprague *et al.*]

benefit of every defence that they could have made by special plea, is secured to them under the plea of the general issue. . The object of every plea is to enable the defendant to make good his defence. If the legislature secures to him this right under a given plea, he is as completely protected as if he were at liberty to plead a dozen pleas.

The mode which is usually adopted in declaring under this statute is a practical illustration that it may be effectually carried into practice. It is only necessary to state the execution of the note and the several endorsements, as in the common form, and aver a general liability and non-performance, and the right to recover is shown. All the appropriate allegations and averments are easily made. The statute is certainly an innovation on the common law doctrine of contracts and of pleading, but it does not follow from this that it is void. It is the business of legislation to improve on the defects of the common law, and however much we may venerate that system, our veneration cannot extend so far as to induce us to protect it against a positive enactment. The judgment must be reversed, and judgment on the demurrer for the plaintiff.